## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| HEIDI LANGAN, *on behalf of herself and all others similarly situated*,<br>        *Plaintiff*,<br><br>        v.<br><br>JOHNSON & JOHNSON CONSUMER COMPANIES, INC.<br>        *Defendant*. | No. 3:13-cv-1470 (JAM)<br>No. 3:13-cv-1471 (JAM) |

### OMNIBUS RULING RE: PENDING MOTIONS

These combined cases concern when a company may lawfully call its products "natural." Plaintiff Heidi Langan has brought two putative class actions alleging deceptive marketing practices in the well known Aveeno line of products, produced by defendant Johnson & Johnson. In one case (the Sun Case), she challenges defendant's claim as displayed on product labels that its sunscreens contain "100% naturally-sourced sunscreen ingredients." In the other case (the Bath Case), she challenges the labeling claim that Aveeno baby washes use a "Natural Oat Formula."

The parties have filed a swarm of motions, variously seeking summary judgment, to exclude expert reports, and to certify the respective classes. I ultimately conclude that neither side is entitled to summary judgment in either case, and that none of the expert reports are so flawed that they should be excluded altogether. I will also certify the damages class in the Bath Case. But I will not certify the class in the Sun Case because I conclude that plaintiff lacks standing to pursue an injunctive action.

BACKGROUND

*The Products*

These cases involve products in Johnson & Johnson's Aveeno line. The Sun Case implicates six Aveeno sunscreen products.[1] All of these products are so-called physical sunscreens, which use ingredients such as titanium dioxide and zinc oxide to block the harmful effects of sunlight. Physical sunscreens are distinct from chemical sunscreens, which use chemicals to absorb the sun's rays and disperse them. The Aveeno physical sunscreens use active ingredients that are naturally-sourced, as opposed to the chemical sunscreens, which use chemical active ingredients. Physical sunscreens have a number of benefits, including being gentler and less likely to be absorbed in the skin, but they cost more to produce.

The labels of each of these Aveeno sunscreen products state that they contain "100% naturally sourced sunscreen ingredients," and provide "natural protection." *See* No. 13-cv-1470, Doc. #69-1 at 7. But the entire sunscreen product (*i.e.*, the material that comes out when a customer squeezes the tube or bottle) contains additional lotion substances beyond the ingredients that perform a sunscreen function. The parties dispute what percentage of the entire product ingredients are properly characterized as natural, but agree, at minimum, that more than 35% of all the ingredients in each sunscreen product are *not* natural.

The Bath Case implicates two Aveeno Baby products, the Calming Comfort Bath and the Wash & Shampoo. These products contain Avena Sativa (Oat) Kernel Extract, as well as other chemical ingredients. Until November 2012 and November 2013, respectively, the labels of

---

[1] The six products are Aveeno Baby Natural Protection Mineral Block SPF 30; Aveeno Baby Natural Protection Lotion Sunscreen with Broad Spectrum SPF 50; Aveeno Natural Protection Mineral Block SPF 30; Aveeno Natural Protection Lotion Sunscreen with Broad Spectrum SPF 50; Aveeno Baby Natural Protection Mineral Block Face Stick SPF 50+; and Aveeno Baby Natural Protection Face Stick with Broad Spectrum SPF 50. Sale has been discontinued of the three products with "Mineral Block" in their names.

Wash & Shampoo and Calming Comfort Bath contained the claim that they were a "Natural Oat Formula." No. 13-cv-1471, Doc. #66-1 at 8.  If water is considered as a natural ingredient, both bath products contain over 60% natural ingredients, but contain less than 1% natural non-water ingredients.

While plaintiff argues that defendant's varied "natural" label claims are misleading, defendant contends that the statements are literally truthful and not misleading.  In the Sun Case, defendant argues that the "natural" claim merely means that the *active* sunscreen ingredients are naturally sourced, despite the fact that the products' remaining lotion ingredients are chemical. In the Bath Case, defendant argues that the baby products really do use a "natural oat formula," apart from anything else that is in the product.

### *The Named Plaintiff*

Plaintiff Heidi Langan is a resident of Connecticut who has purchased products from both the Sun and Bath Cases with the above labeling. Plaintiff testified at her deposition that she bought the products in part because she believed that the products were natural. She testified that it was "possible" she would have purchased the products even if they did not contain the challenged claims. *See* No. 13-cv-1471, Doc. #92-3 at 37. But she also testified that she believed the claims to mean that the products were 100% natural, and that this belief was important to her in choosing to buy them.

Plaintiff is also a personal friend of one of the lead attorneys that seeks to be appointed class counsel, attorney Nicole Veno. Plaintiff and attorney Veno have been acquaintances who have seen each other occasionally for ten years. Plaintiff stated at her deposition that she does not know what responsibilities she has to keep informed about the case, but stated that she

understood that the case was about defendant's allegedly false claims that the products were 100% natural, and that she reviewed the complaint before it was filed.

### *Expert Reports*

Plaintiff has put forward a total of three expert reports in the two cases. Dr. Elizabeth Howlett wrote a report for both cases. Dr. Howlett is, among other things, a professor in the Department of Marketing at the University of Arkansas' business school and a consultant for the Food and Drug Administration.

In both reports, she attempted to show that reasonable consumers would be misled by the challenged claims. In order to do so, she designed surveys administered by Qualtrics Software Company, which showed the products to consumers who said they had purchased similar products—sunscreen and baby wash, respectively—in the past three months. The respondents were divided between a "test" group and a "control" group. The test group was shown the front and back labels of the actual products, and the control group was shown the same products with the natural claims removed from the labels. The participants were instructed to examine the labels as if they were considering buying the products, and then asked a series of questions about the products, such as whether they were "calming." They were also asked whether the products were natural: For the sunscreens, they were asked whether the products were "100% natural." No. 13-cv-1470, Doc. #69-9 at 10–11.  For the baby washes, they were asked whether the products were "an all-natural formula." No. 13-cv-1471, Doc. #66-20 at 10.

For each of the six different sunscreen products and two different baby wash products, there was a significant difference between the percentage of respondents from the different groups about whether the product was natural. For the sunscreen products, the difference was stark. About 90% of respondents to the test group answered "yes" that the product was 100%

natural, while 12% or fewer of the control respondents answered "yes" to that question. *See* No. 13-cv-1470, Doc. #69-9 at 11–12. For the bath products, the difference was less extreme, but still significant, with between 71% and 78% of test group respondents answering "yes" as to whether the product is an all-natural formula, and between 36% and 40% of control group respondents answering "yes" to the same question. No. 13-cv-1471, Doc. #66-20 at 10–11.

In the Bath Case, plaintiff also produced an expert report from Colin Weir, who employed a so-called "hedonic regression analysis." *See* No. 13-cv-1471 Doc. #66-19 at 8. This analysis, by incorporating sales data from a wide array of similar products, attempts to isolate through regression analysis the price premium defendant was able to charge by making "natural" claims about the bath products. Weir concluded that, within the relevant statute of limitations, defendant made an extra $3,903,942 in all the relevant states ($108,231 in Connecticut) because of the natural price premium. *Id.* at 22.

### *Pending Motions*

Plaintiff has moved for class certification in both cases. In the Sun Case she seeks certification under Fed. R. Civ. P. 23(b)(2), seeking only declaratory and injunctive relief. The proposed class definition is as follows:

> All purchasers of the Aveeno® Brand Natural Protection Sunscreen products (Aveeno® Baby Brand Natural Protection Lotion Sunscreen with Broad Spectrum SPF 30 and SPF 50, Aveeno® Brand Natural Protection Lotion Sunscreen with Broad Spectrum SPF 30 and SPF 50, and Aveeno® Baby Brand Natural Protection Face Stick with Broad Spectrum SPF 50 and SPF 50+) in Alaska from January 25, 2011 to the present, and in Arkansas, California, Connecticut, Delaware, the District of Columbia, Florida, Hawaii, Illinois, Massachusetts, Michigan, Missouri, New Jersey, New York, Rhode Island, Vermont, Washington and Wisconsin from September of 2010 until the present, who purchased the Products primarily for personal, family or household purposes. Specifically excluded from this Class are: the Defendant, the officers, directors and employees of Defendant; any entity in

> which Defendant has a controlling interest; any affiliate, legal
> representative of Defendant; the judge to whom this case is
> assigned and any member of the judge's immediate family; and
> any heirs, assigns and successors of any of the above persons or
> organizations in their capacity as such.

Alternatively, she seeks to certify the following class:

> All purchasers of the Aveeno® Brand Natural Protection
> Sunscreen products (Aveeno® Baby Brand Natural Protection
> Lotion Sunscreen with Broad Spectrum SPF 30 and SPF 50,
> Aveeno® Brand Natural Protection Lotion Sunscreen with Broad
> Spectrum SPF 30 and SPF 50, and Aveeno® Baby Brand Natural
> Protection Face Stick with Broad Spectrum SPF 50 and SPF 50+)
> in the State of Connecticut from September of 2010 until the
> Present, who purchased the Products primarily for personal, family
> or household purposes. Specifically excluded from this Class are:
> the Defendant, the officers, directors and employees of Defendant;
> any entity in which Defendant has a controlling interest; any
> affiliate, legal representative of Defendant; the judge to whom this
> case is assigned and any member of the judge's immediate family;
> and any heirs, assigns and successors of any of the above persons
> or organizations in their capacity as such.

No. 13-cv-1470, Doc. #69 at 1–2.

In the Bath case, she seeks certification for a damages class under Fed. R. Civ. P.

23(b)(3) with the following class definition:

> All purchasers of the Aveeno® Baby Brand Wash and Shampoo
> until November of 2012 and Aveeno® Baby Brand Calming
> Comfort Bath baby wash until November of 2013, beginning on
> the following dates in the following states: in Alaska from January
> 25, 2011 in California, Connecticut, Delaware, the District of
> Colombia, Illinois, New York and Wisconsin from January 25,
> 2010; in Florida, Hawaii, Massachusetts, and Washington from
> January 25, 2009; in Arkansas and Missouri from January 25,
> 2008; in Michigan, New Jersey, and Vermont from January 25,
> 2007; in Rhode Island from January 25, 2003; and in any
> additional states which the Court determines to have sufficiently
> similar law to Connecticut without creating manageability issues,
> who purchased the Products primarily for personal, family or
> household purposes. Specifically excluded from this Class are: the
> Defendant, the officers, directors and employees of Defendant; any
> entity in which Defendant has a controlling interest; any affiliate,

6

> legal representative of Defendant; the judge to whom this case is
> assigned and any member of the judge's immediate family; and
> any heirs, assigns and successors of any of the above persons or
> organizations in their capacity as such.

Or alternatively:

> All persons who purchased either the Aveeno® Baby Brand Wash
> and Shampoo from January 25, 2010 until November of 2012 or
> who purchased Aveeno® Baby Brand Calming Comfort Bath baby
> wash from January 25, 2010 until November of 2013, in the State
> of Connecticut and in any additional states which the Court
> determines to have sufficiently similar law to any of the foregoing
> states without creating manageability issues; who purchased the
> Products primarily for personal, family or household purposes.
> Specifically excluded from this Class are: the Defendant, the
> officers, directors and employees of Defendant; any entity in which
> Defendant has a controlling interest; any affiliate, legal
> representative of Defendant; the judge to whom this case is
> assigned and any member of the judge's immediate family; and
> any heirs, assigns and successors of any of the above persons or
> organizations in their capacity as such.

No. 13-cv-1471, Doc. #66 at 1–2.

The parties have also filed cross-motions for summary judgment in both cases. Defendant seeks summary judgment on all counts, arguing that plaintiff has not created a genuine dispute of material fact that the challenged claims are deceptive to a reasonable consumer. No. 13-cv-1470, Doc. #85; No. 13-cv-1471, Doc. #137. Plaintiff has moved for complete summary judgment in the Sun Case and partial summary judgment on the issue of liability in the Bath Case, arguing in both that the undisputed facts establish that defendant is liable under the Connecticut Unfair Trade Practices Act (CUTPA). No. 13-cv-1470, Doc. #94; No. 13-cv-1471, Doc. #129.

Finally, defendant has moved to exclude all of the expert reports in both cases. No. 13-cv-1470, Docs. #84 (motion to exclude expert testimony of Howlett), #113 (motion to strike portions of Howlett's response declaration); No. 13-cv-1471, Docs. #78 (motion to preclude expert testimony of Howlett), #85 (motion to preclude expert testimony of Weir).

7

**DISCUSSION**

***Motions to Preclude***

I begin with the motions to preclude the expert testimony of Dr. Howlett and Mr. Weir. I

resolve these motions now, because for summary judgment purposes I may only consider

evidence that would be admissible at trial. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 143

(1997); *Schaghticoke Tribal Nation v. Kempthorne*, 587 F. Supp. 2d 389, 395 (D. Conn. 2008).

Expert testimony is admissible if the following conditions are met:

> (a) the expert's scientific, technical, or other specialized
> knowledge will help the trier of fact to understand the evidence or
> to determine a fact in issue; (b) the testimony is based on sufficient
> facts or data; (c) the testimony is the product of reliable principles
> and methods; and (d) the expert has reliably applied the principles
> and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). My role

is to act as "a gatekeeper to exclude invalid and unreliable expert testimony." *Bickerstaff v.

Vassar Coll.*, 196 F.3d 435, 449 (2d Cir. 1999). Defendant claims the three reports are all so

methodologically flawed that they must be excluded.

In evaluating survey reports like Howlett's, it is appropriate to consider if the following

conditions are present:

> (1) the proper universe was examined and the representative
> sample was drawn from that universe; (2) the survey's
> methodology and execution were in accordance with generally
> accepted standards of objective procedure and statistics in the field
> of such surveys; (3) the questions were leading or suggestive; (4)
> the data gathered were accurately reported; and (5) persons
> conducting the survey were recognized experts.

*Gucci Am., Inc. v. Guess?, Inc.,* 831 F. Supp. 2d 723, 738 (S.D.N.Y. 2011).

While defendant's criticisms have some force, they are not so strong as to render Howlett's reports altogether inadmissible. Howlett used a representative sample acquired by a reputable third-party survey company, and screened for participants who had purchased similar products. The methodology and execution at least satisfy the minimum requirements of reliability and industry standards, and are simple in design. Nor were the questions excessively leading or suggestive—though they did track the package wording closely, the questions could be answered with a "yes," "no," or "don't know," allowing for a range of responses and not obviously manipulating the participant toward any one answer. The data gathered appears to be accurately reported. Finally, there is no dispute that Dr. Howlett is a recognized expert, despite any criticism of how she ran this particular survey.

Further, "errors in a survey's methodology usually go to the weight accorded to its conclusions rather than its admissibility." *POM Wonderful LLC v. Organic Juice USA, Inc.*, 769 F. Supp. 2d 188, 197 (S.D.N.Y. 2011); *see also Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 228 (2d Cir. 1999). Some surveys are so flawed that they must be excluded as unreliably prejudicial, but courts "routinely admit[] flawed survey evidence where the evidence does not appear to be devoid of all probative value." *POM Wonderful*, 769 F. Supp. 2d at 200. I conclude that Howlett's surveys are admissible.[2]

I turn next to Weir's damages analysis in the Bath Case. Defendant criticizes the Weir report as both irrelevant and unreliable. Regression analysis is inadmissible if it is "so incomplete as to be inadmissible as irrelevant," including omitting major variables that are "too

---

[2] Defendant also challenges the admissibility of Howlett's response declaration on the grounds that it is untimely and unauthorized. *See* No. 13-cv-1470, Doc. #113. But as plaintiff argues, Howlett's response was appropriate rebuttal as contemplated under Fed. R. Civ. P. 26(a)(2)(D). *See* No. 13-cv-1470, Doc. #125; *Assoc. Elec. Gas Ins. Servs. v. Babcock & Wilcox Power Generation Grp., Inc.,* 2013 WL 5771166, at *2–7 (D. Conn. 2013); *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 326 (S.D.N.Y. 2009). Defendant's motion is therefore denied substantially for the reasons stated in plaintiff's response.

significant" to be ignored. *Bickerstaff*, 196 F.3d at 449; *see also Floyd v. City of New York*, 861 F. Supp. 2d 274, 289 (S.D.N.Y. 2012)

As an initial matter, hedonic regression analysis is an accepted form of analysis to address the effect of certain attributes on product prices, and this methodology has been accepted by some courts. *See, e.g.*, *In re NJOY, Inc. Consumer Class Action Litig.*, 2016 WL 787415, at *4 (C.D. Cal. 2016); *Hartle v. FirstEnergy Generation Corp.*, 2014 WL 1317702, at *9 (W.D. Pa. 2014); *but see In re ConAgra Foods, Inc.*, 90 F. Supp.3d 919, 1024 (C.D. Cal. 2015).

Defendant attacks the reliability of Weir's report on many grounds. *See* No. 13-cv-1471, Doc. #87 at 16–17. First, defendant contends that, in Weir's analysis, several product attributes that seem likely to be desirable to consumers are found to have a negative association with price. In other words, the regression seems to imply that certain product attributes—like that the product is "doctor recommended"—make consumers *less* likely to purchases the product at a given price. As Weir points out, however, such findings regarding "desirable" characteristics that are not the central focus of the analysis are not uncommon in econometric analysis, and they do not render the study itself inherently unreliable.

Defendant further argues that Weir's analysis is unreliable because it omits many product-claim variables that defendant had internally identified as material to consumers, such as "tear free," "fun," or "value." No. 13-cv-1471, Doc. #75 at 86. Weir replies that he had good reason to exclude all these variables as they are either not correlated with the relevant "natural" claims, adequately covered by brand dummy-variables because the claims are specific to only one brand, exist in an extremely small fraction of sales, are extremely uncommon in the dataset, or are common to almost all products in the dataset. *See* No. 13-cv-1471, Doc. #105-2 at 30-31. Defendant further argues that, while Weir controlled for different states, he should have also

controlled for inter-state geography, and also that he should have accounted for which retailer the products were sold at, and the advertising associated with the products. Weir generally argues that hedonic regressions are more accurate when they focus on the most salient characteristics, and should not consider the entire universe of possible explanatory variables. He also maintains that advertising is "not a product attribute," and is otherwise accounted for in the regression because it will affect various product attributes. Doc. #105-2 at 19.

Whether or not Weir made the perfect or best possible methodological choice with respect to all these variables, I am convinced that he did not omit "the major variables" that would warrant preclusion of his analysis at trial. *See Bickerstaff*, 196 F.3d at 449. "While the omission of variables from a regression analysis may render the analysis less probative than it otherwise might be," such omission does not usually render an analysis inadmissible. *Bazemore v. Friday*, 478 U.S. 385, 400 (1986) (Brennan, J., concurring). At trial defendant may challenge Weir's findings by pointing to any omitted variables, but I am not convinced that any omissions warrant preclusion.

Defendant further objects to Weir's lumping together into a single variable non-identical claims. For example, he considered claims such as "health," "healthy," "safe," and "clinically proven" under the one variable of "health" claims. *See* No. 13-cv-1471, Doc. #87 at 31. But to make a workable regression analysis in this case, some judgment is required to consider similar-but-not-identical claims together in order to find sufficiently robust results. While reasonable minds may differ about whether such claims should have been considered together, Weir made a reasonable methodological choice that does not render the analysis so unreliable that I must exclude it.

Defendant also argues that Weir had access to incomplete data and labels, making his report unreliable. According to defendant, there was a lag period between when the product labels were approved and when they went into effect. Weir responds that tweaking the model to account for these dates would not substantially affect the calculated price premium. Nor does the fact that Weir did have complete access to the labelling information of every relevant product render the entire study unreliable. These are comparatively minor concerns that can be pursued at trial.

Next, defendant argues that Weir's damages analysis is irrelevant because it is not adequately tied to plaintiff's theory of liability as required by the Supreme Court in *Comcast v. Behrend*, 133 S. Ct. 1426 (2013). In that case, the Supreme Court held that, in order to satisfy Rule 23(b)(3)'s predominance requirement, a plaintiff must propose a damages model consistent with the theory of liability. *Id.* at 1433. That is, a plaintiff must show that damages can be calculated in a way that isolates the damages attributable to the wrongful conduct rather than other factors that are not at issue in the case. "Damages are measured by the difference between what the plaintiff paid and the value of what the plaintiff received." *In re Scotts EZ Seed Litigation*, 304 F.R.D. 397, 412 (S.D.N.Y. 2015). Plaintiff therefore needs to propose a damages model that isolates the price premium that defendant was able to charge as a result of the "Natural Oat Formula" claim.

I have already concluded that Weir's damages analysis is not so methodologically flawed as to be inadmissible. The report also adequately shows that damages can be calculated in a fashion consistent with and isolated to plaintiff's liability theory. Defendant objects that Weir conflated many different types of natural claims as a variable in his regression analysis. It is true that Weir lumped together many different natural claims, including some "all-natural" claims.

But, while defendant may raise this argument at trial to show that the class is entitled to lesser damages than Weir claims, this conflation was a legitimate methodological choice. *See* No. 13-cv-1471, Doc. #105-2 at 33-35 (citing studies finding that consumers do not distinguish between, for example, the claim that a product is "natural" vs. "organic"). Defendant is correct that none of the studies Weir cites employ the exact methodology that he does, but they have relevant similarities that provide a legitimate basis for his methodological choice. As Weir explains in his declaration, the appropriateness of lumping these different natural claims together can be tested, at least to some extent, by evaluating the "standard error" with respect to the natural variable in the regression. Defendant may forcefully argue that Weir's analysis is significantly weakened because he did not conduct a more probing analysis to determine if all natural claims are understood the same way by consumers, but such a flaw in the methodology would not render the analysis so unreliable that it would not be helpful at all to the finder of fact.

Defendant also objects that Weir only purports to show the price premium attributable from the challenged claim compared with no claim whatsoever. It argues that Weir needed to measure the price premium attributable to the deceptive claim compared against the new "Natural Oat Extract" claim now found on the relevant products and not challenged in this litigation. But of course the simple fact that plaintiff has not challenged the new claim in this litigation is not tantamount to a concession that the new claim is not also misleading. Plaintiff's theory of liability is that defendant deceptively claimed to be selling a natural product, when in reality the product contained almost entirely synthetic ingredients aside from water. *See* No. 13-cv-1471, Doc #12 at 2 (amended complaint) ("The Products' principal display panels . . . represent that the entire formula of the Products consists of a 'Natural Oat Formula.' This statement is false and misleading to a reasonable consumer."); Doc. #105-2 at 5 (reply

declaration of Colin B. Weir) ("My understanding of Plaintiff's theory of liability . . . is that the entire statement 'Natural Oat Formula' is misleading, not just a portion of that phrase."). Plaintiff's damages model purports to calculate what damages the class incurred as the result of defendant making the allegedly deceptive claim as compared against it not making the claim. The theory of injury and damages are consistent.

Plaintiff therefore does not have to prove at this stage that Weir's analysis is completely accurate, but only that it is a reasonable method of calculating the class's damages. Weir's regression analysis may be impeachable on many grounds at trial, but it certainly purports to measure the damages attributable to plaintiff's theory of wrongdoing. That fact alone, combined with the report's otherwise adequate reliability for admissibility purposes, is sufficient for Weir's analysis to survive any challenge under *Comcast*. Therefore, I will deny defendant's motion to exclude Weir's damages analysis.

### *Summary Judgment Motions*

The parties have cross-moved in both cases for summary judgment. The principles governing motions for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S.

14

Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan*, 134 S. Ct. at 1866.

All four summary judgment motions in these two cases concern defendant's possible liability under the Connecticut Unfair Trade Practices Act. CUTPA, of course, prohibits the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b(a). The statute "provides a private cause of action to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice." *Harris v. Bradley Mem'l Hosp. & Health Ctr., Inc.*, 296 Conn. 315, 351 (2010). CUTPA claims may be based on either an "actual deceptive practice" or an unfair practice—that is, a "practice amounting to a violation of public policy." *Ulbrich v. Groth*, 310 Conn. 375, 409 (2013). Plaintiff alleges in these cases that the challenged claims were deceptive practices.

To succeed on a CUTPA claim alleging deceptive practices, a plaintiff must establish that the defendant undertook: "[1] a representation, omission, or practice, that [2] is likely to mislead consumers acting reasonably under the circumstance, and [3], the representation, omission, or practice is material." *F.T.C. v. LeadClick Media, LLC*, 838 F.3d 158, 168 (2d Cir. 2016) (applying criteria under the Federal Trade Commission Act); *id.* at 167 n.4 (noting that CUTPA criteria are the same as under the Federal Trade Commission Act).

The Second Circuit distinguishes between literally or impliedly false claims and those claims that are merely misrepresentations that are subject to "more than one reasonable interpretation." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007). When an advertising message is subject to more than one interpretation, a court must look to

consumer response data to determine what the intended consumer thinks of the message. *Ibid.*; *see also Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 562 (S.D.N.Y. 2007) (noting in part that consumer perception evidence "virtually demands [expert] survey research").

Plaintiff here contends that the challenged labeling claims were false on their face, and thus that no consumer perception evidence is required to establish that they were misleading. I do not agree. I conclude that defendant's claims in both the Sun and Bath Cases were subject to more than one reasonable interpretation. The claim that the sunscreens contained "100% naturally-sourced sunscreen ingredients," though plausibly misleading, is technically true if interpreted in the light defendant suggests—that is, if "sunscreen ingredients" is understood to mean only the "active ingredients," apart from the rest of the product that combines with the active ingredients. While there may be reason to doubt that this is the most common interpretation of that phrase, it is at least a plausible one that a jury may properly consider.

Similarly, while reasonable consumers could interpret the term "Natural Oat Formula" to imply that the entire product was natural, defendant's characterization of the phrase, as describing an overall formula that contains natural oat, is also plausible. At the least, there remains a genuine issue of fact regarding whether these claims are false on their face. Considering that there are also genuine factual disputes about whether these claims are misleading to reasonable consumers, plaintiff cannot conclusively establish at this stage that defendant violated CUTPA, and I will therefore deny both her motions for summary judgment.

On the flip side, defendant argues that plaintiff has not established a genuine factual dispute that the challenged labeling claims are misleading. But this contention rests heavily on the argument that Howlett's testimony is inadmissible. I have already concluded that I may consider her expert reports. The reports provide evidence that most participants in her surveys

16

understood the challenged claims to mean the products were all-natural, which defendant concedes that they are not. Whatever the strength of defendant's critiques of Howlett's work, I have little difficulty concluding that plaintiff has adduced enough evidence that a reasonable trier of fact could conclude that the challenged claims were misleading.

Defendant further contends that plaintiff has not provided sufficient evidence that any alleged misrepresentation was material to consumers. "A material misrepresentation is one that involves information that is important to consumers, and that is therefore likely to affect a consumer's choice of or conduct regarding a product." *See F.T.C. v. Bronson Partners, LLC*, 564 F. Supp. 2d 119, 135 (D. Conn. 2008). In the advertising context, an express or deliberately implied claim made by a company is presumptively material, with "the assumption that the willingness of a business to promote its products reflects a belief that the consumers are interested in the advertising." *Ibid.*

Here, defendant complains that plaintiff relies solely on defendant's own internal marketing documents. But this criticism is far from convincing. If defendant did not believe the labeling claim was important to consumers, why would it conduct internal studies discussing the challenged claim and related wording? Even if defendant's internal documents do not conclusively establish that defendant believed the alleged misrepresentation was material, plaintiff has provided evidence sufficient to establish this element for summary judgment purposes. While it is conceivable, for instance, that consumers would not care about the difference between an "all-natural" baby wash product and one with a tiny amount of natural oat and a host of synthetic ingredients, defendant's internal documents emphasizing the importance of "natural" claims to consumers are powerful evidence of materiality and enough in light of common sense for the claim to survive.

17

Third, defendant claims that plaintiff has not provided evidence of causation—that the claimed loss was the "result of" the misrepresentation. *See* Conn. Gen. Stat. Ann. § 42-110g. Generally, under Connecticut law, causation is a question reserved for the trier of fact, unless "a fair and reasonable person could reach only one conclusion" that there was no causation. *Abrahams v. Young & Rubicam, Inc.*, 240 Conn. 300, 307 (1997).  Plaintiff provides testimony that she purchased the products because of the all-natural claim; defendant rebuts by saying that plaintiff concedes that she might have purchased it without the challenged claim. Plaintiff's testimony is sufficient at this stage—where I must view the facts in the light most favorable to plaintiff—to deny summary judgment on causation grounds.

Finally, defendant challenges the sufficiency of plaintiff's evidence of ascertainable loss. An ascertainable loss is "a loss that is capable of being discovered, observed or established. . . . The term 'loss' necessarily encompasses a broader meaning than the term 'damage,' and has been held synonymous with deprivation, detriment and injury." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 218 (2008).  Such loss does not have to be proven in an actual dollar amount, but is considered ascertainable if it is measurable. *Ibid.* Even if a plaintiff fails to prove a specific amount of ascertainable loss, when she seeks injunctive relief and attorney's fees, such relief may be given if she shows by a preponderance of the evidence that some loss has occurred.

In the Bath Case, Weir's expert testimony—which purports to show the price premium Connecticut customers paid for the products as a result of the allegedly misleading claim— constitutes sufficient evidence that plaintiff suffered an ascertainable loss. In the Sun Case, plaintiff represents that there are measurable damages in the form of a price premium paid by consumers, but that the volume of sales (and hence the number of prospective class members) is

too small to warrant the effort of seeking to certify a damages class. Nonetheless, plaintiff

testified that she believed she was deceived by the challenged claim, and therefore received a

product that was different from what she believed she had purchased and less valuable to her. As

the Connecticut Supreme Court has observed, "[w]henever a consumer has received something

other than what he bargained for, he has suffered a loss of money or property." *Hinchliffe v. Am.*

*Motors Corp.*, 184 Conn. 607, 614 (1981). Such a loss is ascertainable for CUTPA purposes "if

it is measurable even though the precise amount of the loss is not known. . . . That the loss does

not consist of a diminution in value is immaterial, although obviously such diminution would

satisfy the statute." *Ibid.* Plaintiff's evidence is thus sufficient to satisfy this element of CUTPA

for purposes of summary judgment.

In sum, I will deny the cross-motions for summary judgment in both cases. Plaintiff has

not shown that the merits in her favor are so clear that there is no genuine issue of fact

remaining. Defendant likewise has not shown the absence of any genuine issue of fact that its

labeling claims were not misleading.

### Class Certification – The Sun Case

Plaintiff seeks to certify classes to litigate her claims in both the Sun and Bath Cases. For

the Sun Case, she seeks class certification under Fed. R. Civ. P. 23(b)(2) only for the purpose of

seeking declaratory and injunctive relief, rather than to seek money damages.

In order for a plaintiff to have standing under Article III, she must show not only that she

has suffered an "injury in fact" that was caused by defendant's allegedly unlawful conduct, but

also that a favorable decision by the Court is likely to redress that injury. *See Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555, 560-61 (1992). If a plaintiff seeks prospective injunctive relief, then

she must show that she is "likely to suffer future injury" from the challenged conduct. *City of Los*

*Angeles v. Lyons*, 461 U.S. 95, 105 (1983). When plaintiffs seek to represent a class, they must personally have standing with respect to the class relief requested, and it is not enough for there to be an injury that "has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

Defendant argues that plaintiff does not have standing to pursue injunctive relief because a favorable decision issuing an injunction would not redress her injuries. I agree. Whatever plaintiff may have believed at the time she purchased the sunscreen products, she now understands the true ingredients of the products. She alleges she suffered the injury of paying an excessive price for defendant's products because she was deceived by defendant's misleading claims. But she is no longer deceived by those claims, and she admitted in her deposition that she does not intend to buy the products again. Accordingly, an injunction requiring defendant to remove any misleading claim from the products would be of no benefit to plaintiff personally. *See Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp.3d 285, 295–96 (S.D.N.Y. 2015) (plaintiff who was now aware of allegedly misleading advertising had no standing to pursue injunctive relief); *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) (plaintiff who was no longer subscriber to satellite radio service had no standing to pursue class-wide injunctive relief to redress radio company's allegedly unfair marketing practice); *Cattie v. Wal–Mart Stores*, 504 F.Supp.2d 939, 951 (S.D.Cal. 2007) (plaintiff who was now aware of allegedly misleading advertising had no standing to pursue class-wide injunctive relief). Therefore, plaintiff has no standing, and she may not pursue class certification.

I recognize that some district courts have reached a different conclusion on similar facts. *See, e.g.*, *Belfiore v. Procter & Gamble Co.*, 94 F. Supp.3d 440, 445 (E.D.N.Y. 2015) (collecting cases). In essence, these courts reason that not to allow a plaintiff to sue for injunctive relief after

the plaintiff has become aware of allegedly misleading advertising would defeat the very purpose

of state consumer protection statutes that authorize such aggrieved plaintiffs to sue for injunctive

relief. One court, for example, notes that "the only way a consumer could enjoin deceptive

conduct would be if he were made aware of the situation by suffering injury," but that "once the

consumer learned of the deception, he would voluntarily abstain from buying and therefore could

no longer seek an injunction." *Ibid.*

I am not convinced by this reasoning. Regardless of the salutary purpose of consumer

protection statutes, they cannot alter the bedrock requirements for federal constitutional standing.

*See Anderson v. Hain Celestial Grp., Inc.,* 87 F. Supp.3d 1226, 1234 (N.D. Cal. 2015) ("While

the court is certainly cognizant of the important state interest underlying California's consumer

protection statutes, it almost goes without saying that such an interest can never overcome a

constitutional standing prerequisite."). Indeed, the fact that there may be no identifiable plaintiff

who may pursue a particular claim has never been accepted as adequate reason to confer

standing on a plaintiff who is otherwise unable to meet the standing doctrine's requirements. Nor

does the lack of injunctive relief wholly defeat the deterrent purpose of such consumer protection

statutes to the extent that they may otherwise authorize suits for money damages and in addition

may allow for injunctive actions to proceed in state courts that are not subject to federal

constitutional standing requirements. Accordingly, because plaintiff lacks standing to seek class-

wide injunctive relief, I will decline to certify the class in the Sun Case.

### Class Certification – The Bath Case

Plaintiff seeks to certify a money-damages class under Fed. R. Civ. P. Rule 23(b)(3). To

certify a class under Rule 23(a) and (b) of the Federal Rules of Civil Procedure, the Court must

ensure the proffered class meets at least six prerequisites. Specifically, Rule 23(a) provides that:

> (a) One or more members of a class may sue or be sued as
> representative parties on behalf of all members only if:
>> (1) the class is so numerous that joinder of all members is
>> impracticable;
>> (2) there are questions of law or fact common to the class;
>> (3) the claims or defenses of the representative parties are
>> typical of the claims or defenses of the class; and
>> (4) the representative parties will fairly and adequately
>> protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, "[a] class action may be maintained if Rule 23(a) is satisfied

and if: . . . (3) the court finds that questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

R. Civ. P. 23(b); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011); *Johnson

v. Nextel Commc'ns*, 780 F.3d 128, 137–39 (2d Cir. 2015); *Sykes v. Mel S. Harris & Assocs.

LLC*, 780 F.3d 70, 80–81 (2d Cir. 2015).

To satisfy the first Rule 23(a) requirement of "numerosity," plaintiff must demonstrate

that the size and composition of the class is such that certifying "a class is superior to joinder" of

individual plaintiffs to litigate their claims. Fed. R. Civ. P. 23(a)(1); *Pa. Pub. Sch. Employees'

Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). Here, plaintiff has satisfied

this requirement: while the exact size of the class is not known, the claims implicate millions of

dollars of purchases, and certainly thousands of customers. *See Kaye v. Amicus Mediations &

Arbitration Grp., Inc.*, 300 F.R.D. 67, 78 (D. Conn. 2014) ("[E]vidence of exact class size or

identity of class members is not required, and the court may rely on reasonable inferences drawn

from available facts.").

To satisfy the second requirement of Rule 23(a), plaintiff must demonstrate the existence

of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Sykes*, 780 F.3d at

80. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" through the same or similar conduct by the defendant. *Dukes*, 564 U.S. at 349–50. Moreover, class members must share a claim that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. To satisfy this requirement, it will suffice to show just "a single [common] question" among class members. *Id.* at 359.

The proposed class satisfies the commonality requirement. The "Natural Oat Formula" labeling claim was indisputably made to the whole class. A central question of this litigation is whether that claim was deceptive. Under CUTPA, whether claims are deceptive depends on a "reasonable consumer" standard, and does not require an individual inquiry to determine whether the individual plaintiff was deceived. Having concluded that Howlett's expert testimony is admissible, I also conclude that plaintiff has shown that the question of whether the statements were deceptive to a reasonable consumer is subject to common proof. *See In re Scotts EZ Seed Litigation*, 304 F.R.D. at 409 ("Generalized proof will determine whether the 50% thicker claim was false or misleading . . .").

Plaintiff likewise has satisfied the typicality requirement. Like commonality, the typicality requirement for class certification is satisfied if the claims of the class representatives are typical of those of the class members—where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Fed. R. Civ. P. 23(a)(3); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying

individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). Although

defendant argues that plaintiff is subject to unique defenses, it is clear that the question of

whether the challenged labeling claim was deceptive applies as well to plaintiff as to any other

potential plaintiff and class member. Thus "the same unlawful conduct" was directed at her and

the other members of the class, and she satisfies the typicality requirement.

Next, Rule 23(a)(4) requires consideration of whether plaintiff can fairly and adequately

represent the class. For this purpose, the Court must determine "whether: 1) plaintiff's interests

are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are

qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec.

Litig.*, 574 F.3d at 35. A conflict "between named parties and the class they seek to represent"

will be sufficient to defeat class certification only if the conflict is "fundamental." *Ibid.*

Defendant argues that plaintiff cannot adequately represent the class because she has a

previous relationship with class counsel and has failed to pay adequate attention to the progress

of the case.  But defendant's contention that plaintiff has an "undeniable and overwhelming

ignorance" of this litigation is not accurate. No. 13-cv-1470, Doc. #87 at 29. Plaintiff testified

that she bought the products and thought they were natural, that she reviewed the complaint

before it was filed, and received periodic updates. There is no requirement that the named

plaintiff have the kind of detailed knowledge defendant suggests she must have—general

knowledge is enough. *See, e.g.*, *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,

301 F.R.D. 116, 134 (S.D.N.Y. 2014).

Nor is there sufficient evidence that plaintiff's relationship with class counsel creates no

less than a fundamental conflict with the rest of the class members. Plaintiff and class counsel

are not intimate friends and have no apparent financial relationship outside of this case.

As to the requirements under Rule 23(b)(3), plaintiff has also shown that common issues will predominate over individual issues. The "predominance" requirement is met "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir. 2010).

As noted above, the question of whether defendant's claim was deceptive to a reasonable consumer is a central question in this litigation, and plaintiff has adduced evidence that it can be shown by class-wide proof. Defendant nonetheless argues that common questions do not predominate because plaintiff has provided no evidence that consumers have any common definition of the word "natural." But Howlett's report—despite the flaws that defendant may expose at trial —provides some evidence that consumers were deceived by the labels. Consumers may not have a uniformly consistent definition of "natural," but the rules for class certification do not require clone plaintiffs that all think and perceive exactly alike. And it can hardly be disputed that the bath products *in their entirety* were not "all-natural" under any plausible meaning of that phrase. Seventy percent of the respondents in Howlett's survey said they believed the baby wash was an all-natural formula.

Defendant further argues that predominance is lacking because plaintiff cannot prove that the allegedly deceptive claim was material to all class members. But plaintiff has identified internal documents from defendant that show that defendant itself recognized that consumers are willing to pay a premium for natural products. This alone is powerful evidence that the labeling claims were material in general across the class of consumers. And, as noted above, an express or deliberately implied claim made by a company is presumptively material due to "the

25

assumption that the willingness of a business to promote its products reflects a belief that the consumers are interested in the advertising." *Bronson Partners*, 564 F. Supp. 2d at 135.

The final predominance question is whether plaintiff has shown that common issues will predominate over individual issues across state lines. Plaintiff seeks to certify a class of consumers in 17 states (including the District of Columbia) that she claims have consumer protection statutes that are materially similar to CUTPA.[3] Defendant argues that such a class cannot be maintained because the differences among these state laws are too significant, and it would create grave manageability concerns.

Defendant is correct that a CUTPA class action may only be maintained on behalf of Connecticut residents and others injured in the state. *See* Conn. Gen. Stat. § 42–110g(b); *Fraiser v. Stanley Black & Decker, Inc.*, 2015 WL 3794377, at *6 (D. Conn. 2015). But if the laws of different states do not materially differ, there is no reason a federal court should not certify a multi-state class based on similar state law. "[T]he crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues." *In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d 108, 127 (2d Cir. 2013) (affirming certification of multi-state class based on state contract law); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 570 (S.D.N.Y. 2014).

Defendant has not shown that any minor differences between the consumer protection laws of these 17 states should overwhelm the questions common to the class. For example, it appears that none of the relevant states' highest courts have held that individual reliance is required to prove deception under the relevant provisions. *Cf. Blessing v. Sirius XM Radio Inc.*,

---

[3] The states are: Arkansas, California, Connecticut, Delaware, the District of Columbia, Florida, Hawaii, Illinois, Massachusetts, Michigan, Missouri, New Jersey, New York, Rhode Island, Vermont, Washington and Wisconsin.

2011 WL 1194707, at *12 (S.D.N.Y. 2011) (declining to certify multi-state class where several of the relevant consumer protection statutes required a showing of individual reliance). All the states have a private right of action for consumer protection violations, allow class actions, and have various other important similarities. Where the relevant statutes of limitations differ, plaintiff has accounted for that in her damages analysis and proposed class definition. In short, defendant has failed to show sufficiently significant differences among the relevant state laws, and I find that common questions predominate for the entire proposed, multi-state class.

I also find that the "superiority" requirement under Rule 23(b)(3) is satisfied because a class action is the best method for adjudicating this controversy. "[T]he Supreme Court has [recognized that] Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litig.,* 729 F.3d at 130 (citing *Amchem Prods, Inc., v. Windsor,* 521 U.S. 591, 617 (1997)). Such is the case here, because the relatively modest damages that might be recovered by any single consumer would likely make the cost of individual litigation prohibitive.

Lastly, defendant argues that the proposed class is not ascertainable. The Second Circuit recognizes an "implied requirement of ascertainability" in Rule 23. *Brecher v. Republic of Argentina,* 806 F.3d 22, 24 (2d Cir. 2015). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Id.* at 24–25.  Defendant argues that the class is not ascertainable because requiring putative class members to submit declarations about their purchase history "would invite them to speculate, or worse." *Weiner v. Snapple Corp.*, 2010 WL 3119452, at *13 (S.D.N.Y. 2010). But district courts in this circuit routinely find classes to be

ascertainable in similar circumstances. *See, e.g.*, *Ebin*, 297 F.R.D. at 567; *In re Scotts EZ Seed Litigation*, 304 F.R.D. at 407. Affidavits of purchase are sufficient to establish who belongs to the class, and this requirement does not render the class unmanageable. The ascertainability standard is, after all, "not demanding" and is "designed only to prevent the certification of a class whose membership is truly indeterminable." *Ebin*, 297 F.R.D. at 567 (declining to follow *Snapple* and noting that "the class action device, at its very core, is designed for cases like this where a large number of consumers have been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit" and that "the ascertainability difficulties, while formidable, should not be made into a device for defeating the action"). I conclude that the proposed class is ascertainable and that all other certification requirements are satisfied, and therefore I will certify the proposed class for the Bath Case.

## CONCLUSION

The cross-motions for summary judgment in both cases are DENIED. No. 13-cv-1470, Docs. #85, #94; No. 13-cv-1471, Docs. #129; #137. The motions to exclude the expert testimony of Dr. Elizabeth Howlett (No. 13-cv-1470, Docs. #84 & #113; No. 13-cv-1471, Doc. #78), and Colin Weir (No. 13-cv-1471, Docs. #85, #86) are DENIED. The motion to certify the class in Case No. 13-cv-1470 (Doc. #70) is DENIED. The motion to certify the class in Case No. 13-cv-1471 (Docs. #66, #67) is GRANTED. A class will be certified with the following definition:

> All purchasers of the Aveeno® Baby Brand Wash and Shampoo
> until November of 2012 and Aveeno® Baby Brand Calming
> Comfort Bath baby wash until November of 2013, beginning on
> the following dates in the following states: in Alaska from January
> 25, 2011 in California, Connecticut, Delaware, the District of
> Colombia, Illinois, New York and Wisconsin from January 25,
> 2010; in Florida, Hawaii, Massachusetts, and Washington from
> January 25, 2009; in Arkansas and Missouri from January 25,
> 2008; in Michigan, New Jersey, and Vermont from January 25,
> 2007; in Rhode Island from January 25, 2003; and in any

additional states which the Court determines to have sufficiently
similar law to Connecticut without creating manageability issues,
who purchased the Products primarily for personal, family or
household purposes. Specifically excluded from this Class are: the
Defendant, the officers, directors and employees of Defendant; any
entity in which Defendant has a controlling interest; any affiliate,
legal representative of Defendant; the judge to whom this case is
assigned and any member of the judge's immediate family; and
any heirs, assigns and successors of any of the above persons or
organizations in their capacity as such.

It is so ordered.

Dated at New Haven this 13th day of March 2017.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge